UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICKEY CALHOUN,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>REGINA HOOK,<br><br>　　　　　　　　　　Defendant. | No. C08-5697 RJB/KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for: December 4, 2009** |

This civil rights action has been referred to the Honorable Karen L. Strombom pursuant to 28 U.S.C. § 636 (b) and Local Rules MJR 3 and 4. Plaintiff Rickey Calhoun brings this action pursuant to 42 U.S.C. § 1983. Before the Court is the motion of Defendant Regina Hook for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 17. Defendant claims that Mr. Calhoun's Amended Complaint (Dkt. 9) should be dismissed on *res judicata* grounds and for failure to state a claim. Dkt. 17. Mr. Calhoun has responded. Dkt. 28. Defendant has filed a reply. Dkt. 32. Having carefully reviewed the submissions of the parties and balance of the record, the undersigned recommends that Defendant Hook's motion should be denied on res judicata grounds, but granted because Plaintiff has failed to state a claim under § 1983.

REPORT AND RECOMMENDATION - 1

## BACKGROUND

At all times relevant hereto, Mr. Calhoun has been a pretrial detainee confined at the Special Commitment Center (SCC), a treatment center for civilly detained sexually violent predators located on McNeil Island, in Pierce County, Washington. Dkt. 9, p. 3; Dkt. 17, p. 4.

Between October 2004 and January 2008, Mr. Calhoun filed three administrative complaints, two lawsuits in Pierce County Superior Court based on the administrative complaints, and three federal lawsuits (this action filed on November 18, 2008, *Calhoun v. Galbraith, et al.*, C08-5101 RBL/JKA filed on February 14, 2008, and *Calhoun v. Robinson, et al.*, C08-5744RJB/KLS, filed December 10, 2008). These actions are discussed in more detail below. Defendant Hook argues that this lawsuit against her is based on the same facts as were alleged by Plaintiff in his state lawsuit (hereinafter "*Hook I*,"[1] which was dismissed with prejudice by Judge Fleming on June 8, 2007. Dkt. 32, p. 1.

The actions brought by Mr. Calhoun all initially stem from an incident (hereinafter "the Chain Incident") that occurred on September 15, 2004, described by the Washington State Court of Appeals, as follows:

> In June 2004, Calhoun began working for the SCC maintenance department under William Hutterman's supervision. On September 15, 2004, Hutterman wrapped a chain around Calhoun's wrist and made a racially derogatory comment to him. On October 1, 2004, Calhoun approached SCC Custodial Supervisor Bridgett Burgess and asked her whether there were any custodial job openings. Calhoun disclosed that the reason he wanted to transfer to her department was because of the September 15 incident and other negative interactions he had with Hutterman. Burgess urged Calhoun to file a grievance, but Calhoun refused. Following her conversation with Calhoun, Burgess reported Calhoun's allegations to SCC Grievance Investigator Darold Weeks.

---

[1] Defendant has referred to the relevant state action as *Hook I* and this federal action as *Hook II*. The court finds this designation helpful and adopts it.

REPORT AND RECOMMENDATION - 2

> On October 8, 2004, Burgess informed Vocational Program Manager Tom
> Stepanek of Calhoun's allegations regarding Hutterman. Stepanek then verbally
> reported Calhoun's allegations to Associate Superintendent Rick Ramseth. Three
> days later, Stepanek sent a written account of these allegations to Ramseth.
> Burgess also provided Ramseth a written statement regarding her conversation
> with Calhoun. Subsequently, Weeks, Stepanek, and Ramseth each attempted to
> speak to Calhoun about the incident and urged him to file a grievance. Each time,
> Calhoun refused to talk about the incident or file a grievance.
>
> On October 23, 2004, Calhoun sent a letter to SCC Superintendent Dr. Henry
> Richards, in which he complained about the chain incident and explained that
> Hutterman's general behavior had created a racially hostile working environment.
> Additionally, Calhoun admitted that he had rebuffed attempts by Weeks,
> Stepanek, and Ramseth to discuss his allegations against Hutterman or file a
> grievance. Calhoun did not raise any complaints regarding Weeks, Stepanek, Dr.
> Richards, or Burgess in the letter. Finally, Calhoun informed Dr. Richards that
> Stepanek had arranged for him to be transferred to work in the custodial
> department.
>
> Although Ramseth conducted an internal investigation, Dr. Richards requested an
> investigation by DSHS' Human Resources Division, Equal Opportunity Section
> (HRD) on November 1, 2004. On November 4, 2004, Calhoun was notified that
> the HRD had opened an investigation. In May 2005, the HRD issued letters to
> both Dr. Richards and Calhoun informing them that it had completed its
> investigation. The HRD advised them that it had substantiated Calhoun's
> allegations and that remedial steps would be taken. Based on this investigation,
> Dr. Richards formally disciplined Hutterman for violating SCC Policy 140,
> Resident Abuse.

*Rickey Calhoun v. State of Washington, et al.*, 146 Wn. App. 877, 193 P.3d 188 (Wash App. App. Div. 2, 2008) (No. 36722-0-II, July 31, 2008; amended September 30, 2008) (finding therapeutic work by SVP detainees does not fall under definition of "employee" under Rev. Code Wash. 49.60).[2]

**A.      2002-2005: Three Administrative Complaints**

In October 2004, Mr. Calhoun filed a complaint with Washington's Division of Access and Equal Opportunity (DAEO) regarding the Chain Incident. Dkt. 9, pp. 5-6, ¶23-24. Mr.

---

[2] This is Mr. Calhoun's other state lawsuit (filed against the SCC and several of their employees) which was also dismissed on summary judgment in July 2007 by Judge Hogan. While this lawsuit involved his treatment at SCC, Regina Hook was not named as a defendant. Mr. Calhoun appealed the summary judgment order and on July 31, 2008, in the published opinion referred to above, the Washington Court of Appeals rejected Calhoun's contention he was an employee and/or a "vulnerable adult" under state law. *Rickey Calhoun v. State of Washington, et al.*, 146 Wn.App. 877, 193 P.3d 188 (2008) (No. 36722-0-II, July 31, 2008; amended September 30, 2008).

REPORT AND RECOMMENDATION - 3

Calhoun makes no allegation in *Hook II* that Defendant Hook had any involvement with this administrative complaint.

In March 2005, Mr. Calhoun filed a complaint with the Washington State Human Rights Commission (HRC) regarding the Chain Incident. Dkt. 9, p. 6, ¶25-26. HRC investigates employment discrimination by employers pursuant to Washington law and in conjunction with the federal Equal Employment Opportunity Commission (EEOC). *See* Rev. Code Wash. 49.60. HRC declined to investigate based on a lack of statutory jurisdiction over SCC resident complaints. Dkt. 9, p. 7, ¶30. Mr. Calhoun alleges in *Hook II* that Defendant Hook was involved with this administrative complaint in approving the findings of the investigator that the HRC had no jurisdiction because there was no employer/employee relationship. *Id.*, p. 7.

In September 2005, Calhoun filed another complaint with the DAEO alleging retaliation by SCC employees for filing the above complaints and various civil lawsuits mentioned below. Dkt. 9, p. 8, ¶34[3]. Mr. Calhoun alleges in *Hook II* that Defendant Hook was the investigator on this complaint, who failed to conduct an investigation into his complaints of harassment and retaliation, and as a result, Mr. Calhoun was forced to endure many more months of harassment and retaliation that could have been curtailed. *Id.*, p. 10.

**B.     2006-2007: *Hook I* and Judgment of Dismissal**

In July 2006, Mr. Calhoun filed a lawsuit in Pierce County Superior Court (*Hook I*) against the State of Washington, David Hamilton, *Regina Hook*, Idolina Reta and John Does 1-20, complaining that his March 2005 administrative complaint filed with the HRC asking for an investigation of his SCC Maintenance Department supervisor for racial discrimination was

---

[3] Although Mr. Calhoun refers to a September 2005 date, the December 8, 2005 DAEO decision dismissing the complaint reflects a filing date of October 3, 2005. For clarity and consistency, the Court refers herein to the "September 2005 DAEO decision."

REPORT AND RECOMMENDATION - 4

improperly handled. Dkt. 17-2; *Rickey Calhoun vs. State of Washington, David Hamilton, Regina Hook, Idolina Reta, and Does 1-20*, Pierce County Superior Court Cause No. 06-2-09957-1. The complaint was brought under RCW 74.34, RCW 49.60, and included tort claims of official misconduct, negligence, retaliation, and failure to protect from discrimination. Dkt. 17-2.[4]

In his Amended Complaint for Damages in *Hook I*, filed on August 8, 2006, Mr. Calhoun included incidents occurring in September through December of 2005, alleging that Regina Hook, as David Hamilton's supervisor:

> 4.15 [R]eviewed the case memorandum and issued the Notice of Dismissal for Calhoun's complaint on behalf of HRC. The Case Memorandum stated that CALHOUN was an inmate at a correctional facility and that HUTTERMAN was a correctional officer assigned to the Maintenance Department performing his everyday duties. If HOOK had properly reviewed the findings of fact and conclusion of law, she would have known that HAMILTON'S investigation was improper.

Dkt. 17-2, pp. 5-6.

He also included an allegation that Defendant Hook was involved in the dismissal of his September 2005 DAEO complaint:

> 4.24 In December of 2005 CALHOUN received a dismissal of his [administrative DAEO] complaint stating that available evidence did not substantiate the allegations. The investigator in the complaint was HOOK.

*Id.* at p. 8.

He also included an allegation of retaliation:

> 5.5 As a further and proximate cause of such acts and/or omissions, CALHOUN suffered discrimination and retaliation from DSHS employees as a result of filing his complaint with DSHS and HRC . . . .

*Id.* at p. 9.

---

[4]The court's reference to electronically filed documents follow the pagination in CM-ECF.

REPORT AND RECOMMENDATION - 5

On May 10, 2007, Defendant Hook and her codefendants filed a motion for summary judgment. Dkt. 17, p. 5. Defendants argued, *inter alia*, that any incidents identified in the August 8, 2006 amended complaint occurring subsequent to the filing of Mr. Calhoun's state tort claim were not properly before the court and could not be considered pursuant to RCW 4.92.100 (requiring "meaningful information" as to the conduct and circumstances surrounding the tort claim so that the government entity is given the opportunity to investigate the claimant as well as his claimed injuries). Dkt. 28-2, pp. 17-18; pp. 20-21 (citing RCW 4.92.100; *Nelson v. Dunkin*, 69 Wn.2d 726, 728-729, 419 P.2d 984 (1966). Defendants argued that any allegations regarding a September 2005 complaint to the [DAEO] were outside the scope of issues contained in Mr. Calhoun's tort claim because the tort claim filed on August 18, 2005 related only to HRC's investigation of his complaint against his SCC Maintenance Department supervisor for racial discrimination during the Chain Incident. Dkt. 28-2, p. 22.

Defendants also argued in their motion for summary judgment that Mr. Calhoun's claims against them must be dismissed for lack of prosecution pursuant to CR 41(b) because Mr. Calhoun failed to file his complaint for six months, did not serve the named defendants with either his complaint or amended complaint, did not disclose witnesses, filed no further pleadings, and conducted no discovery. Dkt. 28-2, pp. 25-26.

On June 8, 2007, Judge Fleming granted the motion for summary judgment and issued an Order dismissing the matter with prejudice. Dkt. 17-3, p. 1. (*Order Granting State Defendants' Motion For Summary Judgment*, filed June 8, 2007).

**C.      Federal Lawsuit ("*Hook II*")**

In January 2009, Mr. Calhoun, now acting *pro se*, filed this Section 1983 action (hereinafter "*Hook II*"). Dkt. 9. Mr. Calhoun alleged "for background information only" the

REPORT AND RECOMMENDATION - 6

facts relating to the Chain Incident and that in December 2005, his September 2005 DAEO complaint was dismissed and the investigator at fault was Regina Hook. *Id.*, p. 5, ¶35.[5]

Under a separate heading identifying "facts that make up the complaint," Mr. Calhoun alleges that in September 2005, after having been subjected to retaliation and harassment from managers at SCC for months, he filed a complaint with "the same agency (DAEO-EOS) that substantiated the chain incident. Dkt. 9, p. 8. In December 2005, Mr. Calhoun received notice that his complaint was being dismissed because the allegations of retaliation could not be substantiated. *Id.*, p. 8; Dkt. 32-4, p. 3. The investigator on this complaint was Defendant Hook, the same individual who had "improperly signed off on the fraudulent investigation by David Hamilton when she was a manager of the Human Rights Commission a few months earlier." Dkt. 9, p. 8.

Mr. Calhoun alleges that Defendant Hook violated agency policies and procedures in not conducting an investigation into his complaint of harassment and retaliation, and that her previous involvement in his March 2005 complaint with the Human Rights Commission (HRC) posed a conflict of interest because she was aware that he had complained of her approval of Mr. Hamilton's investigation. *Id.*, p. 10. Mr. Calhoun also alleges that because of Defendant Hook's actions, he was forced to suffer further harassment and retaliation until the issue was settled in January of 2007. *Id.*, pp. 10-11. Mr. Calhoun claims that Defendant Hook's actions violated his constitutional rights under the First and Fourteenth Amendments because she retaliated against him for complaining about her involvement in the first complaint by failing to conduct an

---

[5] As noted above, Mr. Calhoun asserted these allegations in *Hook I*, stating "[i]n December of 2005 CALHOUN received a dismissal of his complaint stating that available evidence did not substantiate the allegations. The investigator … was HOOK." Dkt. 17, Exh. 2, p. 8, ¶4.24. These same allegations were litigated to final judgment in favor of Defendant Hook and her codefendants in *Hook I*.

REPORT AND RECOMMENDATION - 7

investigation into his second complaint and that her failure to perform an investigation violated his rights to due process and equal protection. *Id.*, p. 11.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12 motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Two working principles underlie the Supreme Court's decision in *Bell Atlantic*; first, the tenant that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) (citing *Twombly*, 550 U.S. at 555). Second, determining whether a complaint states a plausible claim is context-specific, requiring the viewing court to draw on its own experience and common sense. *Id.* (citing *Twombly*, 550 U.S. at 556). A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the

REPORT AND RECOMMENDATION - 8

complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 129 S.C. at 1948-51.

**DISCUSSION**

**A.     Evidence Presented**

Where "matters outside the pleading are presented to and not excluded by the court," a Rule 12(b)(6) motion is "treated as one for summary judgment and disposed of as provided in Rule 56," while allowing all parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). In transforming a dismissal into a summary judgment proceeding, the court must inform a plaintiff proceeding *pro se* that it is considering more than the pleadings and afford the opportunity to present all pertinent material. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

However, a court may "consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, at 907 (9th Cir. 2003). As long as the authenticity of the documents are not "subject to reasonable dispute," judicial notice may be taken of matters of public record without converting a Motion to Dismiss on the Pleadings into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). A court may take judicial notice of court records. *MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980).

REPORT AND RECOMMENDATION - 9

Defendant Hook requests that the court take judicial notice of the following:

1) Complaint for Damages, *Ricky Calhoun v. State of Washington et al*, Pierce County Superior Court Cause No. 06-2-09957-1, with court filing stamp dated July 31, 2006.

2) Amended Complaint for Damages, *Ricky Calhoun v. State of Washington et al*, Pierce County Superior Court Case No. 06-2-09957-1, with court filing stamp dated August 8, 2006.

3) Order Granting State Defendants' Motion For Summary Judgment, *Ricky Calhoun v. State of Washington et al*, Pierce County Superior Court Cause No. 06-2-09957-1, filed June 8, 2007 (Hook I Final Judgment).

4) Court of Appeals Opinion, *Rickey Calhoun v. State of Washington, et al.*, 146 Wn. App. 877, 193 P.3d 188 (Wash. App. Div. 2, 2008) (No. 36722-0-II, July 31, 2006; amended September 30, 2008) (finding therapeutic work by SVP detainees does not fall under definition of "employee" under Rev. Code Wash. 49.60).

5) DAEO Investigation File, Complainant Ricky Calhoun, EO# 1343-SRet-05, Includes unsubstantiated finding notification letter dated December 8, 2005.

It is appropriate to take judicial notice of such matters of public record. Fed.R.Evid. 201(b); *Lee*, 250 F.3d 668, 688-89 (9th Cir.2001); *Wilson*, 631 F.2d at 119. Plaintiff has not objected. Accordingly, Defendants' request is granted.

In his response, Mr. Calhoun attached seven exhibits: (1) email between S. Eck and T. Lang regarding protective orders; (2) letter from S. Bogan regarding his complaint with the DAEO in November 2004, (3) copy of unsigned Pre-Finding Settlement Agreement, (4) Letter dated July 28, 2005 from Plaintiff's attorney requesting that investigation be reopened, (5) Defendant's motion and supporting memorandum, file-stamped, *Rickey Calhoun v. State of Washington, et al.*, Pierce County Superior Court Case No. 06-2-09957-1, Pierce County Superior Court; (6) Letter from Washington State Risk Management Office acknowledging receipt of August 18, 2005 claim; (7) Letter from Washington State Risk Management Office

REPORT AND RECOMMENDATION - 10

dated September 20, 2005 regarding Plaintiff's allegations that HRC performed a wrongful investigation. Dkt. 28-2, Exhibits 1 through 7, pp. 1-41.

The court may take judicial notice of the above court records in other legal proceedings in a Rule 12 motion, as well as documents referenced in the instant Amended Complaint, without converting a Rule 12 Motion into a summary judgment motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.s. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 and Supp. 2007)). *See also, Intri-Plex Techs., Inc. v. Crest Group, Inc*., 499 F.3d 1048, 1052 (9th Cir.2007) (court may take judicial notice of facts not reasonably subject to dispute, either because they are generally known, are matters of public record or are capable of accurate and ready determination). In addition, the Plaintiff has had a full opportunity to reply to Defendants' response with the attached documents.

**B.     Res Judicata**

Under the Full Faith and Credit Act, federal courts must give state judicial proceedings "the same full faith and credit ... as they have by law or usage in the courts of [the] State ... from which they are taken." 28 U.S.C. § 1738; see *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 519 (1986). This Act requires federal courts to apply the res judicata rules of a particular state to judgments issued by courts of that state. Id. at 523.

In general, the doctrine of res judicata bars a second suit on the same claim *or* on different claims arising from the same facts. Thus, the bar reaches both grounds of recovery that were asserted and those that were not asserted but could have been. *Int'l Union of Operating Eng'rs v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993). The three part res judicata test asks whether the earlier suit "(1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Mpoyo v. Litton*

REPORT AND RECOMMENDATION - 11

*Electro-Optical Systems*, 430 F.3d 985, 987 (9th Cir. 2005) (quoting *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002)).

Because the court finds that the second part of the three part res judicata test – a final judgment on the merits -- is not satisfied, this action is not barred by res judicata.

Mr. Calhoun's claims in *Hook I* were dismissed with prejudice. Dkt. 17-3, pp. 1-2. Defendants argued in the state case, among other things, that the claims against them must be dismissed pursuant to CR 41(b) because Mr. Calhoun had failed to prosecute his claims against them in *Hook I*, and that none of the individually named defendants had been served with the complaint and/or amended complaint. Dkt. 28-2, pp. 25-26.

Any dismissal other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits. Fed.R. Civ. P. 41(b). *Déjà vu-Everett-Federal Way, Inc. v. City of Federal Way*, 96 Wash.App. 255, 979 P.2d 464, 468 (1999). A summary judgment is a final judgment on the merits for purposes of res judicata. *Id.* (citing *Dicken v. Ashcroft*, 972 F.2d 231, 233 n.5 (9th Cir. 1992)).

The phrase "final judgment on the merits" is often used interchangeably with "dismissal with prejudice." *See, e.g., Paganis v. Blonstein*, 3 F.3d 1067, 1071 (7th Cir. 1993) (noting that "with prejudice" is an acceptable shorthand for "adjudication on the merits"); *see also Classic Auto Refinishing Inc. v. Marino (In re Marino),* 181 F.3d 1142, 1144 (9th Cir. 1999); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure § 2373* (1973). Here, the state court granted the motion for summary judgment and dismissed Mr. Calhoun's claims in *Hook I*, with prejudice. However, the court finds that CR 41(b)'s "lack of jurisdiction" exception applies to the *Hook I* dismissal. The Supreme Court has read CR 41(b)'s "lack of jurisdiction" exception broadly, giving the concept of "jurisdiction" meaning beyond its traditional personal and subject

REPORT AND RECOMMENDATION - 12

matter usages: "[T]he exception … encompass[es] those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim." *Costello v. United States*, 365 U.S. 265, 285, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). Here, the court need not look beyond the traditional personal jurisdiction usage as the state court lacked jurisdiction over the individually named parties, including Defendant Hook, because they were never served with process in *Hook I*.

Although it is not clear upon what grounds the state court entered the dismissal with prejudice in *Hook I*, it is clear that Defendant Hook had not been served in that lawsuit and the state court lacked jurisdiction over her person. Thus, there is no final judgment on the merits as to Defendant Hook for purposes of res judicata.

**C.  Claim of Retaliation**

As noted above, the facts preceding and underlying Mr. Calhoun's claims against Defendant Hook are based on two complaints he filed regarding the Chain Incident, one with the HRC and the second with the DAEO[6].

The HRC declined to investigate the first complaint filed in March 2005, based on the lack of statutory jurisdiction over SCC resident complaints because there was no employer/ employee relationship between Mr. Calhoun and the SCC. Dkt. 9, p. 7, ¶30. Defendant Hook argues that her determination that HRC lacked jurisdiction under state law to investigate Calhoun's first complaint as an SCC resident was objectively made in good faith. This is borne out by the subsequent state appellate court finding that Mr. Calhoun was neither a state employee nor a vulnerable adult under Washington law. *Calhoun v. State of Washington,* 146 Wn. App. 877, 193 P.3d 188 (Wash. App. Div. 2, 2008). The court agrees that this decision provides

---

[6] Although Mr. Calhoun filed three administrative complaints, he does not allege that Ms. Hook was involved in his first claim. Thus, the relevant complaints are referred to hereafter as his first and second complaints.

REPORT AND RECOMMENDATION - 13

ample legal support to Defendant Hook's determination that Mr. Calhoun's first administrative complaint did not fall under her agency's (HRC's) jurisdiction.

Mr. Calhoun clarifies in his response to the motion to dismiss, that he is not alleging any misconduct by Defendant Hook in her involvement with his first complaint, i.e., "in her job with the HRC." Dkt. 28, p. 22. Instead, he alleges that Defendant Hook failed to conduct any investigation at all before concluding that there was no evidence to substantiate the allegations in his September 2005 DAEO complaint (the second complaint) and that her previous involvement with his HRC complaint presented a conflict of interest with her involvement in the second complaint. Dkt. 9, pp. 8-9.[7] Mr. Calhoun also alleges that in July of 2005, his attorney contacted Defendant Hook's supervisor, complaining that the investigation in his first complaint was faulty and that Defendant Hook should not have signed off on the fraudulent investigation. Dkt. 9, p. 8.

In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that "by his actions [the defendant] deterred or chilled [the plaintiff's] [protected activity] and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Sloman v. Tadlock*, 21 F.3d 1462 (9th Cir. 1994)(citing *Mendocino Env'l Ctr. v. Mendocino County*, 14 F.3d 457, 464 (1994)). This requires only a demonstration that defendants "intended to interfere with [Plaintiff's] First Amendment rights." *Mendocino Env'l Ctr.*, 14 F.3d at 464 (emphasis added). Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, the proper inquiry asks "whether an official's acts would chill or silence a person of

---

[7] Although Mr. Calhoun refers to a September 2005 date, the December 8, 2005 DAEO decision dismissing the complaint reflects a filing date of October 3, 2005. For clarity and consistency, the Court refers herein to the "September 2005 DAEO decision."

REPORT AND RECOMMENDATION - 14

ordinary firmness from future First Amendment activities." *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C.Cir. 1996), vacated on other grounds, 520 U.S. 1272 (1997).

The intent to inhibit speech may be demonstrated either through direct or circumstantial evidence. See *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1448 (9th Cir. 1997) (circumstantial evidence is sufficient to survive summary judgment motion). For example, in *Hines v. Gomez*, the Ninth Circuit held that circumstantial evidence that an inmate had a reputation for filing grievances and had told a guard that he planned to file a grievance, combined with the jury's rejection of the guard's purported reason for punishing the inmate, "warrants the jury's finding that [the guard] filed the disciplinary report in retaliation for [the prisoner's] use of the grievance system." 108 F.3d at 268.

Thus to demonstrate retaliation, Mr. Calhoun must ultimately prove first that Defendant Hook took some action that would chill or silence a person of ordinary firmness from future First Amendment activities, and second, that Defendant Hook's desire to cause the chilling effect was a but-for cause of her action. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-901 (9th Cir.2008) (internal citations and quotations omitted).

Plaintiff must also plead more than bare, conclusory allegations as to each element, i.e., "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953-54 (2009). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain nonconclusory factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. at 1965; see also *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932,

92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

The court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Iqbal*, 129 S.Ct. at 1950. "We next consider the factual allegations in the complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. Under this test, Mr. Calhoun does not allege facts sufficient to survive a motion to dismiss.

Mr. Calhoun alleges that Defendant Hook "intentionally [did not follow] the policies, protocols, and proper procedures that have been promulgated for her agency in conducting an investigation into a complaint, Plaintiff endured many more months of harassment and retaliation that could have been curtailed." Dkt. 9, p. 10. These allegations are no more than conclusions and are not entitled to the assumption of truth. Moreover, it is well settled that internal policy manuals do not generally create due process rights in others. *See James v. United States Parole Comm'n*, 159 F.3d 1200, 1205 (9th Cir. 1998). Even where the policies are not followed, state law may serve as a basis for § 1983 liability only where such violation is cognizable under federal law. *See* 42 U.S.C. § 1983.

Mr. Calhoun alleges that for "Defendant Hook to accept [the] investigation was improper as there was a complaint pending against her by Plaintiff in her last job for her role in attempting to cover up the "chain incident." Dkt. 9, p. 9. This allegation is no more than a conclusion and therefore is not entitled to the assumption of truth. Mr. Calhoun provides no facts to support a claim of a "pending" complaint. The court can only assume that he is referring to the July 2005 discussion between his attorney and Defendant Hook's supervisor, his attorney "complained of Hook signing off on the fraudulent investigation as Hamilton's supervisor." Dkt. 9, p. 8.

REPORT AND RECOMMENDATION - 16

Mr. Calhoun also alleges that:

> Defendant Hook *did not conduct an investigation* into Plaintiff's complaint of harassment and retaliation. *There is no documentation that Defendant Hook conducted an investigation*, there are no waivers of consent of any witnesses she interviewed, nor did Defendant Hook contact Plaintiff in the course of her investigation to inquire as to what sort of harassment and retaliation he was receiving and which SCC managers were perpetrating it against him. All she did was state in her findings that the allegations could not be substantiated.

Dkt. 9, p. 9 [emphasis added]. From these allegations, the Plaintiff asserts that the court can infer that Defendant Hook allegedly failed to conduct any investigation into Mr. Calhoun's second complaint. Tying this with Mr. Calhoun's previous allegation that his attorney complained of her conduct, the court can infer that Defendant Hook's alleged failure to conduct an investigation was motivated by her desire to retaliate against Mr. Calhoun.

Mr. Calhoun states that he is not alleging entitlement to an investigation conducted in a particular fashion or manner, or to have the investigation reach a particular conclusion. Dkt. 28, p. 23. Thus, the essence of Mr. Calhoun's factual allegations against Defendant Hook is that she failed to conduct an investigation. This allegation, however, is clearly contradicted by the existence of Defendant Hook's investigation file. Dkt. 32, pp. 8-9, Dkt. 32-4, pp. 1-28.

Therefore, the complaint's factual allegations do not allow the court to draw the reasonable inference that Ms. Hook acted in retaliation by failing to conduct an investigation. In addition, the parties agree that Mr. Calhoun was not entitled to an investigation conducted in a particular way and that he has no constitutional right to an investigation that was concluded in his favor. *See also*, *Deveraux v. Perez*, 218 F.3d 1045, 1053-54 (9th Cir. 2000) (no firmly established constitutional right to have investigations performed in any particular manner). In addition, only deprivations of federal rights (*i.e.*, the federal constitution or federal statutes) are actionable under § 1983 and not violations of state law. *Lugar v. Edmonson Ooil Co.*, 457 U.S.

REPORT AND RECOMMENDATION - 17

922, 102 S.Ct. 2744 (1982). The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. *See Ingraham v. Wright*, 430 U.S. 651, 672-73, 97 S.Ct. 1401, 51 L.Ed. 2d 711 (1977); *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). Thus, any claim that Defendant Hook was obligated to investigate his claim under Washington state law, but failed to do so, is not cognizable under federal law. *Deveraux*, 218 F.3d at 1056.[8]

Thus, the court must conclude that Mr. Calhoun cannot show on the basis of his allegations, any deprivation of any firmly established federal law or constitutional right by Defendant Hook.

## CONCLUSION

The undersigned finds that Mr. Calhoun has failed to state a cognizable claim of retaliation against Defendant Hook under 42 U.S.C. § 1983 and therefore, Defendant's motion for judgment on the pleadings should be granted. The defects in Mr. Calhoun's amended pleading are not mere deficiencies in form or language and thus, are not curable by further amendment. Therefore, this case should be dismissed with prejudice without leave to amend.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

---

[8] Thus, Mr. Calhoun's conclusory claim that Defendant Hook's "unwarranted failure to conduct an investigation into [his] complaint as Defendant would have for any other complainant," his due process and equal protection rights have been violated (Dkt. 9, p. 11), also fails to state a cognizable § 1983 cause of action.

REPORT AND RECOMMENDATION - 18

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **December 4, 2009**, as noted in the caption.

DATED this 10th day of November, 2009.

Karen L. Strombom
United States Magistrate Judge